Chief Justice Robertson
delivered the Opinion of the Court.
In October, 1826, Reuben S. Gale, for the purpose of securing to Harrison Blanton three hundred and fifty dol- , °, . , , it- , , J lars which he owed him, mortgaged to. him five horses and all his “undivided interest” in the slaves then in the possession of his mother, as the administratrix of his father’s estate.
In February, 1827, the administratrix and distributees made a division and distribution of the slaves, leaving to the administratrix all of them, except three, for paying debts, and allotting to Reuben S. Gale, only one slave, named Susan. The mortgage had been previously recorded in the proper office.
Only a few days after this allotment, Charles Miles bought Susan from R. S. Gale, and obtained a bill of ° sale of her, signed by his mother and brother, as well as by himself.
In 1828, Blanton filed a bill in chancery for aforeclosure of the mortgage, and a sale of the mortgaged property: alleging, among other things, that Miles, before he bought Susan, had notice of the mortgage, and calling on him to state in his answer, whether he had not, prior to his purchase, seen the mortgage.
Miles, in his answer, denies that the registration of the mortgage was constructive notice to him, and says, *526 respecting actual notice — “as to the alleged mortgage-,, this defendant knows nothing, but that such a paper has, been recorded and certified” — “no notice w.as ever communicated to this defendant, until long after his purchase and. payment of the price, and the registration of tire-said deed, of mortgage was of no effect” — “this respondent states, - that he never did, according to his r.ecollectian and ''belief, hear of the complainant’s deed of mortgage, until since the death, of. the said Reuben S. Gale, which, occurred in September,. 1,828.” But he has not said any where, in a very long answer,, directly and positively, that he had no notice of the mortgage, or that he had not “seen” it, prior to the date of his purchase.
Evidence.
Decree, aBd! appeal.
The adm’í has a right to sell the slaves to pay the debts, anda consequent right o.f possession, hut no legal interest in the title: the title of the heir, though legal, is butac/tose inaction, till after distribution,and his mortgage passes only an equity.
Registration of a mortgage of an equity does not operate as constructive notice: as to a mortgage of a legal right in action — quere.
One witness swore positively and. circumstantially that, before Miles bought Susan, he had notice of Blanton’s mortgage, and that Blanton was requested to release it.
. The Circuit Court having decreed a foreclosure and. sale- — this-appeal is prosecuted to. reverse that decree.
A.t. the date of the mortgage, the- mortgagor’s undivided interest in the slaves in-, the possession of. the administratrix, w.as. legal, and not merely equitable. The administratrix had no legal interest in the title of the-slaves, but had only a qualified right to sell them, for-paying the intestate’s' debts, and. a consequent right to., the possession of t.h.em. But the interest of the mortgagor, though legal, was a right in action, and his mortgage therefore passed only an equitable title..
In The Bank of Kentucky vs. Vance's Adm'rs. 4 Littell's Repts. 168, it has been virtually decided, that the registration of a mortgage of an equity does not operate as. constructive notice. Whether a mortgage of a legal right in action, passing to. the mortgagee only an equi-r table interest, should be placed on the same ground, has never, so far as we know, been expressly decided. And. we need not now express an opinion on the question,, because we are of the opinion that — however the fact may be — the judicial deduction from the record is, that Miles had actual notice of the mortgage prior to the date-of his purchase»
The purchaser of mortgaged property is called on by the'bill of the Vnórtgagee, for a disco very — to say whether he had not seen the mortgage before his purchase; life answers, that he never heard of it $-c. §-c. making divers statements 'to induce the impression, that he 'was a 'purchaser 'without notic'fe (seep. 225 — 6:) hut upon the 'evidence of one Witness, with slight corroborating circumstances, held that he hail actual notice.
A man Mortgages a slave and five horses; but after-wards disposes of three of them, and'dies. Mortgagee administers on his estate; sells one of the horses to pay a debt; an ex’on is levied On the other,andhe buys it: held,that, by this purchase,he only takes an equity of redemption. Also held, that the purchaser of the slave may redeem it; and, as mortgagee might have retained the two horses, under his mortgage, he must credit the debt by (1) the value of the horse sold by himself, and (2) the value of the one sold under execution, — less by the value of the equity of redemption in that one — which is to be ascertained by com paring the Value of that horse, with the aggregate value of all the available mortgaged property.
The testimony of one positive and unimpeached witness is corroborated by the involutions and sinuosities of the answer, upon the question of actual notice, and by its peculiar evasiveness of the question, as to whether Miles had not 'seep the mortgage. He has-, too where, said that he had not -seen it. And he may have -seen i't, even though he had not kihe(Crd of it,” or it had not been 44communicated” to him. 'Once, in direct and simple terms, have said that he never had; hut, after unusual circumlocution and generality, the answer is silent as to whether he had seen it or not. Had he not seen it, he might, at
The testimony of the one witness is also corroborated by the fact, tl-iat Miles required the brother and mother of his vendoftO unite with him in the bill of sale. That the sale was made by R. S. Gale alone and in his own right, has not been denied, and Could not be reasonably doubted. The fact, then, that others were required to .join him in the bill of sale, tends, in some degree, to show that Miles was apprehensive of some after-claim to Su'san; and henCe this circumstance strengthens the deduction, that he had notice of Blanton’s mortgage.
We are therefore of the opinion, that it is our duty to presume, that Miles had actual notice of the mortgage, before he bought Susan from R. S. Gale-.
It sufficiently appears, also, that a portion of the mortgage debt is justly due to the mortgagee, and that the distributioü of the slaves was fair, efiectuál and final; •and it does not appear, that R. S. Gale was, or that he 'ever woúíd have been, entitled to more than the slave which was allotted to him.
Blan'toii alleges, that three of the horses included in the mortgage had been disposed of by R. S-. Gale, and could not be reached by the Chancellor; that another had been sold by himself, as 'the administrator of said Gale, and appropriated to the payment of debts due by him at the time his death; and that the fifth and only remaining horse had been sold under an execution against R. S. Gale and himself, as his surety, and bought by him *528 self, at the price of about twenty dollars, and afterwards sold for his own benefit, for fifty dollars.
As it does not appear, that Blanton might not have retained those two horses under his mortgage, and as they were otherwise disposed of by him, and it does not appear that they were not appropriated to his own use — * Miles is, in equity, entitled to an abatement pro tanto, or, in other words, should be permitted to redeem by paying the balance due to Blanton, after deducting the amount which Blanton had a right to retain on his mortgage: and- that is the aggregate of the price (twenty dollars) for which, as administrator, he says he sold one horse, and the price for which he sold the other horse, after deducting the value of the equity of redemption in that horse — for Blanton, as must be presumed from the facts, bought, at the sheriff’s sale, the equity of redemption only; and the value of that equity should be estimated by distributing, among the available articles of the mortgaged property, according to their value, the amount due on the mortgage, crediting that amount with the twenty dollars received by Blanton, for one of the horses: for example, if the horse was worth fifty dollars, and the slave four hundred dollars, and the sum for which they Avere liable was two hundred dollars, after giving the proper credits, one eighth part of two hundred dollars should be charged to the purchaser of the equity of redemption in the horse; which would make that equity Avorth twenty five dollars; and the residue of the fifty dollars should be credited on the mortgage.
As it Avould seem that Blanton had, by his own voluntary act, disposed of one of the horses, and had, in like manner, appropriated to his oavu use as much of the value of the other, as exceeded the value of the equity of redemption which he bought under execution, his lien on the slave, to this extent, should be postponed for the benefit of Miles; who, in consequence of the sale of those horses, cannot be substituted, as to them, in the place of the mortgagee.
Wherefore the decree is reversed, and the cause remanded for such a decree for foreclosure, as may be proper, according to the foregoing opinion.